UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KEVIN DION ROLLE JR., | Civil Action No. 21-15198 (KM) (AME) |
| Plaintiff, | |
| v. | |
| ESSEX COUNTY CORRECTIONAL FACILITY, et al., | OPINION |
| Defendants. | |

**<u>KEVIN MCNULTY, U.S.D.J.</u>**

Pro se Plaintiff Kevin Dion Rolle., Jr. seeks to pursue a civil rights claim pursuant to 42 § U.S.C. 1983, a New Jersey Civil Rights Act claim, and a state claim for intentional infliction of emotional distress against Essex County Correctional Facility ("ECCF"), Essex County, New Jersey, the United States Marshals Service, and the United States Department of Justice. (DE 1.)[1] Plaintiff also seeks to proceed *in forma pauperis* ("IFP"). I denied Plaintiff's first IFP request without prejudice and administratively terminated the action because the request listed $30,000 in income and failed to include a certified account statement. (DE 3.) Plaintiff now seeks to reopen this matter and renews his request for IFP status. (DE 4.) He also seeks the appointment of pro bono counsel. (DE 2.) For the reasons below, I will grant IFP status, permit some of the Complaint to proceed, and appoint pro bono counsel.

**I.    BACKGROUND**

Plaintiff was a pre-trial detainee at ECCF from January to May 2021. (DE 1 at 7.) During that time, he was generally housed in a two-man cell. (*Id.*) Beginning March 28, 2021, a new cellmate began to subject Plaintiff to "comments of a violent and sexual nature." (*Id.*) Plaintiff

---

[1] When Plaintiff filed his new IFP application, he was detained at the Metropolitan Detention Center (MDC) in Brooklyn pending the disposition of his criminal matter before District Judge Nathan in the Southern District of New York. *See U.S. v. Rolle, Jr.*, SDNY Docket No. 20-CR-594. Thereafter, Plaintiff pled guilty in that case, was sentenced to 60 months' incarceration, and denied compassionate release. (*Id.* at DE 116.) His current location is FCI Hazelton, Register Number: 54230-069, P.O. Box 5000, Bruceton Mills, WV 26525. (*Id.* at DE 151.) The claims he seeks to assert, however, are based on events that occurred when he was a pretrial detainee at ECCF from January to May 2021.

complained numerous times to ECCF staff that he felt unsafe. (*Id.*) On April 6, 2021, Plaintiff's cellmate physically and sexually assaulted him. (*Id.*) Plaintiff contracted a sexually transmitted infection and suffers from stress, anxiety, and suicidal ideations because of the attack. (*Id.*)

According to Plaintiff, ECCF officials violated numerous Prison Rape Elimination Act ("PREA") provisions. (*Id.* at 8.) These include the requirement of screening for gay, bisexual, transgender, or gender-nonconforming individuals who may be at greater risk of assault,[2] and consideration for cell and unit transfers because of harassment or fear for an inmate's safety. (*Id.*)

Plaintiff also alleges that prison officials violated the Eighth Amendment[3] through their deliberate indifference to the risks posed by his cellmate, who had known violent propensities. (*Id.*) Plaintiff alleges that ECCF officials then retaliated against Plaintiff for PREA complaints by isolating him in segregated housing for 17 days, blocking access to medical and mental health treatment, telephones, tablets, commissary, and recreation, and communicating information to gang leaders regarding Plaintiff's sexuality that placed Plaintiff at even greater risk of harm. (*Id.*)

Plaintiff asserts claims pursuant to 42 U.S.C § 1983, the New Jersey Civil Rights Act, and a New Jersey state tort claim for intentional infliction of emotional distress.

## II.   DISCUSSION

### A.   New IFP application

Plaintiff's new IFP application explains that he has attempted, unsuccessfully, to obtain an account statement and certification from three separate MDC officials. (DE 4 at 2.) Plaintiff also explains that the $30,000 was income from the year prior to his incarceration, and that he has received no income since January 2021. (*Id.*). He also certifies that he is not employed at MDC, and does not have a checking or savings account or other property. (*Id.* at 5.) Based on

---

[2]    Nowhere in the Complaint does Plaintiff explicitly identify which protected group he belongs to, but I will assume, for screening purposes, that he falls within one of the categories contemplated by the PREA.

[3]    As a pre-trial detainee who had not been convicted of a crime, Plaintiff was protected by the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment. However, the Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections "at least as great as the Eighth Amendment protections available to a convicted prisoner," without deciding whether the Fourteenth Amendment provides greater protections. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

this new information, I will grant Plaintiff's IFP application. *See Thompson v. Cheatham Cty. Jail*, No. 3:18-CV-00227, 2018 WL 1920415, at *1 (M.D. Tenn. Apr. 24, 2018) (granting IFP application in light of attempts to obtain certified inmate account statements).

I do note that Plaintiff appears to have been transferred to FCI Hazelton in West Virginia to serve his federal sentence (*see* n.1, *supra*), and thus could seek to obtain his certified account statement from the officials there. I also note that early in his criminal proceedings, a Bahamian school, "Cherub College," wrote to certify that it would guarantee Plaintiff's bail up to $1.3 million, suggesting—at that point, at least—that Plaintiff had access to additional funds. (SDNY Docket No. 20-CR-594 at DE 43.) That said, in seeking Plaintiff's assets to satisfy the $1.5 million judgment against him after his guilty plea, even federal prosecutors could locate only $1,617.55 and various luggage and electronics, and Judge Nathan ordered those seized to satisfy the judgment. (*Id.* at DE 106-1.) Accordingly, I am satisfied that Plaintiff's application merits IFP status.[4] Having granted IFP status, I will screen his Complaint.

**B.     Complaint**

   **1.     Screening Standard**

Under the Prison Litigation Reform Act ("PLRA"), district courts must review complaints in those civil actions in which a plaintiff is proceeding IFP. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as explicated by the United States Court of Appeals for the Third Circuit. To survive the court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual

---

[4] Of course, if this turns out to be untrue, Plaintiff's complaint can be dismissed on that basis. 28 U.S.C. § 1915(e)(2)(A).

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting Iqbal, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

### 2.     ECCF

Plaintiff first names ECCF as a defendant. However, ECCF is not a "person" subject to 1983 liability. *See Owens v. Armstrong*, 171 F. Supp. 3d 316, 337 (D.N.J. 2016) (citing *Grabow v. Southern State Corr. Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989)). Accordingly, I will dismiss the claims against ECCF with prejudice. The proper defendant for a claim based on the actions of ECCF would be Essex County, which is also named in the complaint. *See infra.*


content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting Iqbal, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

### 2.     ECCF

Plaintiff first names ECCF as a defendant. However, ECCF is not a "person" subject to 1983 liability. *See Owens v. Armstrong*, 171 F. Supp. 3d 316, 337 (D.N.J. 2016) (citing *Grabow v. Southern State Corr. Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989)). Accordingly, I will dismiss the claims against ECCF with prejudice. The proper defendant for a claim based on the actions of ECCF would be Essex County, which is also named in the complaint. *See infra.*

### 3. New Jersey

Plaintiff next names the State of New Jersey, which is immune from suit. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." That language has been interpreted by the U.S. Supreme Court to encompass a more general immunity from suit: "[A] suit by private parties seeking to impose liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Section 1983 does not override a state's Eleventh Amendment immunity. *See Gromek v. Maenza*, 614 F. App'x 42, 44 (3d Cir. 2015) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)). Accordingly, I will also dismiss the claims against New Jersey with prejudice.

### 4. Federal Defendants

Also immune are the federal Defendants, the USMS and the DOJ. The United States is not subject to suit for constitutional torts, including the civil rights claims Plaintiff seeks to raise, because it is entitled to absolute sovereign immunity absent an explicit congressional waiver. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687 (1949) (sovereign immunity bars suit against the United States either for damages or for injunctive relief requiring government action.) The USMS and DOJ, as federal agencies, are thus immune from suit. *See, e.g., Hindes v. F.D.I.C.*, 137 F.3d 148, 158-59 (3d Cir. 1998); *Gary v. Gardner*, 445 F. App'x 466-67 (3d Cir. 2011) ("the United States Marshals Service is entitled to sovereign immunity from suit" absent an explicit waiver of sovereign immunity); *Richards v. United States*, 176 F.3d 652, 654 (3d Cir. 1999) ("Sovereign immunity not only protects the United States from liability, it deprives a court of subject matter jurisdiction over claims against the United States.") Accordingly, I will dismiss the claims against the USMS and the DOJ with prejudice.

### 5. Essex County

The remaining Defendant is Essex County. Generally, to plead a plausible claim for relief against a municipality like Essex County (as opposed to individual officers or employees), Plaintiff would have to plead facts showing that the municipal defendant caused the underlying constitutional violation through its issuance or adoption of a policy, practice, or custom. *See*

5

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978). A municipally-enacted policy, practice, or custom must be the "moving force" behind the alleged constitutional violation to hold the municipality liable. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *see also Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35-36 (2010).

There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the employer, thereby rendering the employer liable under § 1983. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). "The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." *Id.* (*citing Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 417 (1997). "The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." *Id.* "Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Id.* (citations omitted).

Courts have recognized that a theory of *Monell* liability rooted in inaction—for example, gaps in sexual abuse policy and failure to properly train in the face of known and obvious risks—requires "rigorous," "steeper" standards than other *Monell* claims. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 378 (7th Cir. 2020) (en banc), *cert. denied sub nom. Polk Cty., Wisconsin v. J.K. J.*, 141 S. Ct. 1125 (2021). But those challenges are not "insurmountable"; multiple courts have permitted such claims, including single-incident failure-to-train claims. *Id.* (affirming jury verdict against county and holding that, faced with notice of misconduct, "the County had a legal obligation to act—to take reasonable steps to reduce the obvious and known risks of assaults on inmates," including PREA implementation); *Natale*, 318 F.3d at 585 (holding that "[a] reasonable jury could conclude that the failure to establish a policy to address the immediate medication needs of inmates with serious medical conditions creates a risk that is sufficiently obvious as to constitute deliberate indifference to those inmates' medical needs."); *see also Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 655 (7th Cir. 2021) (noting that, in the healthcare context, it may be impossible to assign blame to any one individual, but holding that, nevertheless, the entity responsible for the overall policy may be liable); *Thomas v. Cumberland County*, 749 F.3d 217

(3d Cir. 2014) (holding that in certain circumstances the need for training can be so obvious that failing to provide it constitutes deliberate indifference); *Doe v. Quinones*, No. CV 17-719, 2019 WL 8989852, at *14 (W.D. Pa. Dec. 3, 2019), *report and recommendation adopted as modified*, No. 2:17CV719, 2020 WL 1150970 (W.D. Pa. Mar. 10, 2020) (denying motion for summary judgment where there was a dispute of material fact regarding the foreseeability of a potential sexual assault including, among other things, the failure to report complaints of harassment).

Here, Plaintiff's allegations arguably fall within the second or third *Natale* categories. Plaintiff alleges that ECCF employees (and therefore Essex County) violated PREA provisions requiring correctional facilities to screen inmates upon intake for risk of victimization based on LGBT or gender non-conforming identity. (DE 1 at 8.) Plaintiff also alleges that ECCF staff violated the PREA by failing to consider inmate transfer requests based on harassment and safety fears. (*Id.*) Finally, Plaintiff alleges that between March 28, 2021, when he was assigned a new cellmate, to April 6, 2021, when the cellmate assaulted him, he "complained on numerous occasions to ECCF staff" without any response. (DE 1 at 7.) Accordingly, I will permit the § 1983 claims against Essex County to proceed.

I also find that Plaintiff's retaliation claim against Essex County can proceed. To plead retaliation under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Here, Plaintiff alleges that ECCF officials retaliated against Plaintiff for asserting a PREA complaint after his assault. In particular, they allegedly moved him to segregated housing and denied him access to treatment, communication, and recreation, and also informed gang leaders about Plaintiff's sexuality, placing him at further risk of harm. (DE 1 at 8.) Such allegations are sufficient, at this juncture, to state a retaliation claim. *See Rivera v. Marcoantonio*, 153 Fed. Appx. 857, 859 (3d Cir. 2005) (after inmate-resident grieved officers' conduct, officers "encouraging other residents to take action against the 'snitch,'" amounted to an adverse action in combination with other retaliatory actions). Accordingly, I will also permit this claim to proceed.

Because Plaintiff has adequately alleged federal constitutional claims, I must also decide whether to exercise supplemental jurisdiction over Plaintiff's state claims. I first find that Plaintiff's NJCRA claim is viable and can proceed past screening, as that statute "was modeled

after § 1983 and is interpreted analogously with § 1983." *Castro v. New Jersey*, 521 F. Supp. 3d 509, 517 (D.N.J. 2021), *appeal dismissed sub nom. Castro v. Cty. of Atl.*, No. 21-1578, 2021 WL 7710069 (3d Cir. Oct. 28, 2021).

Plaintiff also alleges a state-law tort claim of intentional infliction of emotional distress (IIED). "Generally speaking, to establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Saving Fund Society,* 111 N.J. 355, 366 (1988). More specifically, first, the defendant must have acted intentionally or recklessly; that is, the defendant must have intended "both to do the act and to produce emotional distress," or the defendant must have acted "recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." *Id.* Second, the defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotation marks and citation omitted). Third, the defendant's actions must have been the proximate cause of the plaintiff's emotional distress. *Id.* Fourth, the emotional distress suffered by the plaintiff must be "so severe that no reasonable man could be expected to endure it." *Id.* (internal quotation marks and citation omitted). "To prove a claim for intentional infliction of emotional distress, a plaintiff's burden of proof must meet an 'elevated threshold' that is satisfied only in extreme cases ." *DiClemente v. Jennings,* 2012 WL 5629659, at *8 (N.J. Super. App. Div. Nov. 16, 2012). As to this claim, Plaintiff has not provided sufficient detail at this juncture, particularly with respect to any individual ECCF employee's conduct, that would permit this claim to proceed.

Accordingly, I will dismiss this claim, but without prejudice to amendment.

**C.      Motion to appoint pro bono counsel**

In civil cases, neither the Constitution nor any statute gives civil litigants the right to appointed counsel. *See Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). District courts, however, have broad discretion to determine whether appointment of counsel is appropriate under 28 U.S.C. § 1915(e). *See Montgomery v. Pinchack*, 294 F.3d 492, 498 (3d Cir. 2002) (citing *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993)). That said, courts should "exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be

wasted on frivolous cases." *Montgomery*, 294 F.3d at 499. A court's decision to appoint counsel "must be made on a case-by-case basis." *Tabron*, 6 F.3d at 157–58.

Such determinations are made within the *Tabron* framework. After assessing whether the complaint has arguable merit—which it does, as discussed above—courts consider the following non-exhaustive factors:

> (1) the plaintiff's ability to present his or her own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the amount a case is likely to turn on credibility determinations;
> (5) whether the case will require the testimony of expert witnesses;
> (6) whether the plaintiff can attain and afford counsel on his own behalf.

Here, Plaintiff makes only a cursory request for counsel without addressing any of these factors. (DE 1 at 7; DE 2.) Nevertheless, the existing record provides sufficient information. Plaintiff's IFP application already reveals that Plaintiff has limited means. As with any incarcerated individual, access to legal resources will also be limited. This will complicate efforts to effectuate service, conduct discovery (including depositions), and to identify and, if appropriate, amend pleadings to include responsible individuals. The issues surrounding *Monell* and PREA liability may also prove quite complex. Accordingly, I will grant Plaintiff's motion for appointed counsel.

### III. CONCLUSION

For the above reasons, Plaintiff's IFP application and request for pro bono counsel will be GRANTED. After screening, the Complaint will be permitted to proceed in part as follows:

- The Section 1983 and NJCRA claims against Essex County based on Eighth/Fourteenth Amendment and First Amendment retaliation may PROCEED.
- The state IIED claims against Essex County will be DISMISSED WITHOUT PREJUDICE
- All claims against Defendants ECCF, New Jersey, the United States Marshals Service, and the Department of Justice are DISMISSED WITH PREJUDICE.

An appropriate order follows.

/s/ Kevin McNulty

Kevin McNulty
United States District Judge